D. C. TEMPLETON, Appellant, v. J. S. STEPHENS et al., Appellees.

FLORENCE PULLEN et al., Appellants, v. D. C. TEMPLETON et al., Appellees.

No. 40026.

DECEMBER 13, 1930.

REHEARING DENIED JUNE 20, 1931.

Wisdom & Kirketeg, for appellant, D. C. Templeton.

James R. Locke, and M. D. Porter, for appellee and cross petitioner, Aetna Life Insurance Co.

H. P. Jaqua, for appellee and cross petitioner, Matilda Cobb.

James R. Locke, for appellees F. E. Payton and Nellie B. Payton.

M. R. Brant, for appellee Bertha Stephens, and for appellees and cross petitioners, J. S. Stephens, Silas Pullen and Florence Pullen.

DE GRAFF, J.—The pleadings in this case are prolix by reason of the number of parties involved as defendants and cross petitioners, but the issues, however, are well defined. The legal problem for solution presents the question of priority of the claimed mortgage liens on the real estate in controversy. The approach to the facts and issues should be through the avenue of title and the mortgages as disclosed by the instant record. It may be visualized as follows:

In 1921, John F. Haidsiak (not a party here) as legal title-holder of the N½ of SE¼ and the E. 60 acres of the S½ of NE¼ Sec. 8-68-34, Taylor County, Iowa, executed a mortgage for $9000 on the land aforesaid to the Citizens State Bank. This mortgage was duly recorded May 20, 1921. The written assignment of said mortgage to the First Trust & Savings Bank of Chicago was duly recorded May 18, 1921. This mortgage remained of record at all times material to the transactions presently noted. On November 11, 1924, John F. Haidsiak and wife Anna conveyed to the defendants J. S. Stephens and F. E. Payton the above described land consisting of 140 acres, together with N½ of SE¼ Sec. 9-68-34, Taylor County, Iowa, or a total area of 180 acres. This deed was duly recorded March 2, 1925,

and the consideration as stated in the deed "consists of mortgages of record and unpaid interest aggregating $21,827.45 which includes a mortgage of $6,832.08 and unpaid interest thereon which grantees herein assume and agree to pay and cancel of record as part of the purchase price of said premises and to accept the same subject to the remaining mortgages of record." Apparently the grantees (Stephens and Payton) assumed only a mortgage for $6,832.08 and took the land subject to the remaining mortgages. It would seem from the record that in some way or other this mortgage indebtedness was all discharged, except a mortgage for $9000 held by the First Trust and Savings Bank, heretofore mentioned.

On the same date, to wit, March 2, 1925, the defendants F. E. Payton and his wife Nellie conveyed the said 180 acres by quit claim deed to the defendant J. S. Stephens for a recited consideration of $1.00 and other consideration. This deed was duly recorded March 6, 1925. The record discloses that it was understood between said parties to the quitclaim deed that the defendant Stephens would mortgage the premises to Payton to secure two notes, one for $12,000 and one for $2000, the former note being the one declared upon by plaintiff in this suit.

On March 18, 1925, the defendant Stephens (single) did execute a mortgage of $14,000 to the defendant F. E. Payton on the real estate here involved, to wit, 180 acres to secure the two notes above mentioned. Both notes were executed at the same time and had the same date of maturity. This mortgage was duly recorded of record March 19, 1925. On January 26, 1926, the defendant Stephens conveyed by warranty deed the said land to defendant Silas Pullen for a "consideration of $1.00 and other consideration." This deed was duly recorded at 4 P. M. on February 21, 1927. At this point it may be stated that the grantee Pullen was merely a "straw man" in this particular transaction for the purpose of making application and securing a loan from the defendant and cross petitioner Aetna Life Insurance Company. This deed was not produced upon the trial. Stephens testified that this deed when delivered was to Payton as grantee. The trial court so found. The insertion of Pullen's name in this deed was one further evidence of crookedness on the part of Payton.

On February 8, 1927, Silas Pullen and wife Florence, ex-

ecuted a note secured by a mortgage of $9500 to the Aetna Life Insurance Company on the 180 acres hereinbefore described. The Aetna was ignorant of any connivance between Payton and Pullen in this matter. This mortgage was duly recorded at 4:10 P. M. on February 21, 1927.

On February 26, 1927, the defendant Payton entered on the marginal record of the $14,000 mortgage a junior and inferior agreement, reading as follows: "This is to certify that the within mortgage is junior and inferior to a certain mortgage made by Silas Pullen and wife to the Aetna Life Insurance Company, said mortgage dated February 8, 1927." This marginal record entry was signed by F. E. Payton and witnessed by Richard Campbell, Recorder of Taylor County, Iowa.

On February 18, 1927, a release was executed by the First Trust & Savings Bank to John F. Haidsiak and wife Anna of the mortgage assigned to said bank and said release was filed of record February 26, 1927. This release covered the 140 acres heretofore described, which was mortgaged by Haidsiak to the Citizens State Bank and in writing assigned to the First Trust & Savings Bank.

The plaintiff-appellant Templeton purchased the $12,000 note secured by the mortgage deed executed by Stephens to Payton, which mortgage was in the sum of $14,000. The assignment of the mortgage to Templeton was not recorded by him for the reason as stated by him that he "would not be bothered by crooked tax collectors." The $2000 note, also secured by the mortgage of $14,000 aforesaid, was sold by Payton to the defendant and cross petitioner Matilda Cobb with a written guaranty by Payton to Matilda Cobb that Payton would pay the same, if not paid at maturity by the mortgagor Stephens.

By way of brief summary of the record it may be said that at the time the negotiations were had with the Aetna Life Insurance Company, the defendant Silas Pullen was the record titleholder of the 180 acres of land in controversy; that the First Trust and Savings Bank of Chicago then had a first mortgage of record for $9000 on 140 acres of the land in controversy; that the defendant F. E. Payton held a duly recorded second mortgage of $14,000 that secured the two notes, one of which was held by Templeton and the other by Matilda Cobb, in the sums of $12,000 and $2,000 respectively; that the applica-

tion of Silas Pullen to the Aetna Life Insurance Company for a loan was made about November 1, 1926, and said application was forwarded by Payton to said Company on that date together with a letter from Payton stating that the money would be required to take up the $9000 mortgage held by the First Trust & Savings Bank, when it matured December 1, 1926; that altho Pullen applied for a loan of $12,000, the Aetna Life, after it had sent its representative to examine the land, approved a loan in the sum of $9500; that on February 7, 1927, the Aetna Life sent $9500 to Payton & Co., the amount of the approved loan, together with the mortgage to be executed by Pullen and wife; that there was also sent an abstract of title to the land and an opinion of one Judge Porter as to the title shown by the abstract in which opinion the title examiner required the satisfaction of the $9000 loan held by the First Trust and Savings Bank and the $14,000 Stephens mortgage; that on February 8, 1927, Payton used $9,451 of the said loan of the Aetna Life to satisfy the mortgage held by the First Trust and Savings Bank; that in September, 1926, the plaintiff Templeton knew that the $14,000 Stephens mortgage was a second mortgage and always had been a second mortgage; that plaintiff Templeton held a promissory note of $12,000 secured by the Stephens mortgage and that Matilda Cobb held a note of $2000 secured by the same mortgage; that plaintiff Templeton, altho he had received from Payton a written assignment of the mortgage, purposely refused to have said mortgage recorded; that Templeton always looked to Payton and depended on him with reference to the payment of interest and principal, not only on the mortgage in question, but also on mortgages running into many thousands of dollars, which Payton handled for Templeton in a similar manner; that Templeton sent the Stephens note and mortgage to Payton about February 1927, by reason of the fact that Payton had written Templeton that there was a first mortgage of $9000 on the land and that Payton wanted the Stephens papers, and Templeton sent them to Payton ''so he could release the Stephens mortgage and put a new loan on the land, and on substantially the same date he did put a mortgage on the land to the Aetna Life Insurance Company for $9500''; that Payton was the local correspondent of the Aetna Life Insurance Company, but his powers as such, were limited; that when an application for a loan was made, the Aetna Life

sent its own loan agent to examine the farm and report and recommend the amount of the loan to be made; that the loan could not be approved by Payton; that the abstracts of title were examined by counsel for the Aetna Life; that Payton received no pay from the Aetna Life in this matter; that the notes and mortgages were not drawn by Payton; that Payton knew that a more advantageous loan could be had if the owners resided on the land, and Payton wrote Pullen's name in the deed with Pullen's consent and consequently Pullen made the application to the Aetna Life; that Payton was Templeton's agent and knew of the assignment of the $14,000 mortgage he had made to Templeton; that this matter was not disclosed by Payton to the Aetna Life and Templeton did not record his assignment; that the Aetna Life had no notice of the interest of Templeton or of Mrs. Cobb in the $14,000 mortgage; that the Stephens note and mortgage were sent back by Templeton to Payton to borrow more money on the land; that Templeton told Payton "to make any change he wanted, but a change for the better"; that Templeton was later informed of what had been done, but made no denial of Payton's authority; that as to Templeton there can be no question of the authority of Payton to execute the "junior and inferior" agreement; that Templeton has no standing to complain that instead of releasing his mortgage, Payton merely subordinated it to the mortgage of the Aetna Life Company; Payton was the mortgagee and on the face of the record was the owner of the mortgage; that Payton, the record owner of the mortgage, represented to the Aetna Company that the conveyance by Stephens was to Pullen, and that Pullen was the owner of the land; that Payton procured the Aetna Company to make the loan to Pullen on that representation; that it was understood and required that the loan to be made by the Aetna Company should be a first lien; that the Aetna Company relied upon the representations and the acts of Payton, and under the facts, had the right to so rely; that neither Templeton nor Mrs. Cobb recorded their respective assignments; that the Aetna Company acted in good faith.

In the light of the record title and the matters herein stated, let us turn for a moment to the material portions of the decree entered in this cause. The trial court found and determined that the defendant and cross petitioner Matilda Cobb should

1070

have judgment against the defendant Stephens for the sum of $2,188.77 with interest, and that said judgment shall be a valid first lien on the 40 acres, described as the SW¼ of the NW¼ Section 9-68-34 from March 18, 1925, the date of the $14,000 mortgage, and that said judgment shall be superior to the liens and claims of all parties to this suit and that the said Matilda Cobb have judgment *in rem* against this parcel of real estate together with interest and statutory attorney fees. The Aetna Life did not appeal.

We recognize the rule that when two or more notes are secured by the same mortgage, the one which falls due first is entitled to be established as a prior lien against the land described in the mortgage, but this principle of law has no application to the case at bar. The notes secured by the Stephens $14,000 mortgage were of the same date and had the same maturity. Under such circumstances, there is no priority. Whitney v. Eichner, 204 Iowa 1178; Preston, Kean & Co. v. Morris Case & Co., 42 Iowa 549.

It will be remembered that the defendant Payton made a marginal entry on the record of the $14,000 mortgage. There is no semblance of justification or authority for this act of Payton's, so far as Matilda Cobb is concerned. She did not authorize it or know anything concerning it until long after the unauthorized act was done. Payton had no control over her $2000 note and he knew at all times that she had possession and was the owner of said note. The trial court was clearly correct in its finding that Templeton was bound by Payton's act for the reason that Payton was Templeton's agent in this matter, and in fact, sent all of his papers to Payton with the thought that Payton could arrange this matter satisfactorily to him and release the mortgage, if it served Templeton's interests. Payton was simply doing for Templeton what he had been doing for several years in similar transactions aggregating about $80,000.

It may be here pointed out that the superior right decreed in favor of Matilda Cobb over the Aetna Life as to the 40 acres has not been questioned by the Aetna Life. No appeal was taken by the Aetna, consequently there is no reason why the Aetna should receive the superiority gained by Matilda Cobb in the District Court. She won over the Aetna, and whether right or

wrong, without an appeal on the part of the Aetna, Matilda Cobb is entitled to the fruits of her victory.

Secondly, the trial court found and determined that the defendant and cross-petitioner Aetna Life was entitled to subrogation to the extent of the amount expended by the Aetna Life in the payment of the first mortgage held by the First Trust and Savings Bank in the sum of $9000 with interest then due, and that said mortgage was a first lien on the 140 acres of real estate here involved, and that the Aetna Life is entitled to a judgment *in rem* against the real estate and that said judgment *in rem* is superior to the lien and claim of the plaintiff Templeton and all other defendants and cross petitioners and that the Aetna Life is entitled to a foreclosure of said lien as against all other parties to this suit. The court further found and determined that the said judgment in favor of the Aetna Life shall be a judgment *in rem* and a lien on the 40 acres subject only to the senior and superior lien thereon of the defendant and cross petitioner Matilda Cobb as against the said 40 acres. This phase of the decree must be affirmed.

The court gave judgment in favor of Templeton against Stephens for the full amount due on the $12,000 note and established it as a lien upon the forty, subject to the lien of Mrs. Cobb and to the lien of the Aetna Life Company, and also established this judgment as a lien on the 140 acres superior to the liens of all parties except the Aetna Company.

It is immaterial to Templeton whether the $9500 lien be established in favor of the Aetna Company alone or in favor of the Company in part and in favor of Mrs. Cobb as to the rest. As against the Aetna Company, Mrs. Cobb is entitled to a first lien of $2000 on the 40 acre tract. The allowance of a first lien to Mrs. Cobb of $2000 necessarily results in reducing the amount of the lien of the Aetna Company by $2000. In other words, the necessary effect of the allowance of priority to Mrs. Cobb over the Aetna Company took just that amount of the Aetna Company on the 40 acre tract. Templeton's position is not injured to any extent by the fact that Mrs. Cobb in the court below supplanted the Aetna Company in its lien to the extent of the first $2000. A sale on execution of this property was not had at the time of taking this appeal, but the decree determines the rights of the various parties, and when the bidding at the execution sale is

had, the application of the proceeds will be pursuant to the terms of the decree entered, and in conformity to statutory provision.

In conclusion of this matter, it may well be asked, who can successfully question the validity of the Aetna Life Insurance Company's mortgage? Surely the mortgagor Pullen cannot: altho he appealed he has filed no argument. He was the record titleholder and signed the note and mortgage. It was he who endorsed the draft for $9500 which evidenced his loan from the Aetna Life Insurance Company. A mortgagor estops himself from asserting that he did not possess the real estate which he assumed to mortgage, and also from asserting that the mortgage did not convey the rights which it purports to convey. Watts v. Wright, 201 Iowa 1118. The defendant Payton is in no position to question the Pullen mortgage to the Aetna Life. He received the deed to this land from Stephens and thereafter wrote "the junior and inferior agreement" on the margin of the record of the $14,000 Stephens mortgage. This alone is sufficient to remove Payton from the picture. Stephens had parted with his title.

Lastly, is Templeton in a position to now complain? Clearly not. For many years Templeton permitted Payton to have complete charge of the many thousands of dollars of his investments in Taylor County, and permitted Payton to handle his paper as he saw fit. If we concede *arguendo* that Payton was the agent of the Aetna Life, it is well settled that a principal is not charged with the knowledge of his agent when the agent is adversely interested, as Payton was, in the instant matter. See, Findley v. Cowles, 93 Iowa 389, l. c. 395; Laird & Keehner v. McCord, 196 Iowa 972. Plaintiff Templeton was the holder of an unrecorded mortgage lien, which mortgage became junior, by the act of his agent Payton, to the mortgage of the Aetna Life Insurance Company. Templeton, therefore, must bear whatever loss resulted. See, Livermore v. Maxwell, 87 Iowa 705.

When an assignee of a mortgage fails to record his assignment, he takes the risk of dishonest dealing on the part of the mortgagee with subsequent innocent persons. Parmenter v. Oakley, 69 Iowa 388; Jenks v. Shaw, 99 Iowa 604, 605; Farmer, Thompson and Helsell v. The Bank of Graettinger, 130 Iowa 469; Shoemaker v. Ragland, 202 Iowa 947.

The trial court properly analyzed the record evidence in this

case and correctly solved the determinative propositions by the judgment and decree entered.—Affirmed.

EVANS, STEVENS, ALBERT, FAVILLE, KINDIG, and WAGNER, JJ., concur.