GEORGE T. MITCHELL, Appellant, v. JOHN BURCHER, Appellee.

No. 41309.

June 20, 1933.

Rehearing Denied September 29, 1933.

J. R. Jaques and Buell McCash, for appellant.

Valentine & Valentine, T. A. Goodson and H. C. & H. C. Taylor, for appellee.

Claussen, J.—This action was brought in May of the year 1929, upon a promissory note executed by L. A. Burgher and John Burgher in the year 1920, for $4,000. The defendant, John Burgher, was a nonresident of the state, in consequence of which the action was aided by attachment, levied on land owned by said defendant in Davis county, Iowa.

The case was tried to a jury, which returned a verdict for the defendant. The defendant admitted the execution of the note, but pleaded payment, and, in consequence of having the burden of proof as to his defense, opened the case. At the close of his defense, and again at the close of the case, plaintiff moved for a directed verdict, which motion was overruled, and of this plaintiff complains.

The note sued on was executed by L. A. Burgher and defendant on March 17, 1920, bears interest at the rate of 6 per cent, and is payable on demand, and "if no demand is made on March 17th, 1921". On March 3, 1920, L. A. Burgher and A. Burgher executed and delivered to plaintiff a note for $5,000, with interest at the rate of 6 per cent, due on demand, and, if no demand was made, on March 3d, 1921. L. A. Burgher obtained the money for which these notes were given, and the other signers were in truth but sureties for him. On February 28, 1921, plaintiff asked L. A. Burgher for some money, and on said date L. A. Burgher gave him a check for $4,500, drawn on the Peoples Bank of Coatsville, Missouri, of which he (L. A. Burgher) was president and the defendant, John Burgher, was cashier. Shortly before this L. A. Burgher had sold some cattle, for which he realized a sum in excess of $7,000, which was deposited in said bank. L. A. Burgher was told by a clerk in the bank that the check would not be honored. He had a conference with John Burgher in relation to this matter, and it is upon this, and a subsequent conference, that the defense of payment hinges.

But, before proceeding to a consideration of such conference, it will be better to recite some additional facts. At the time plaintiff asked L. A. Burgher for money, neither of the notes before referred to had been paid. At the time the check for $4,500 was delivered to plaintiff, no application was made of it by L. A. Burgher, to either note, and none was made by plaintiff. The check for $4,500 was not paid for want of sufficient funds. The record is somewhat vague as to whether the cattle money, hereinbefore referred to, had been exhausted through checks drawn by L. A. Burgher, or whether it had been depleted in a very substantial sum by application to obligations of L. A. Burgher to the bank. In any event, the check was protested. L. A. Burgher then borrowed $3,600 from a third party, and, after adding this sum to his balance in the bank, he was still unable to take up the check, and the deficiency, $185, was loaned to him by the defendant, John Burgher, who took the note of L. A. Burgher for that amount. For the total of said sums, L. A. Burgher

was given two drafts, drawn by the Peoples Bank, which he took to the bank in Bloomfield, where plaintiff had deposited the $4,500 check, and such check was ultimately returned to him.

The notes and other papers belonging to plaintiff were left with another bank in Coatsville, Missouri, no doubt for safe-keeping, although an officer of the bank, a Mrs. Moler, testifying in the case, at times said that such papers were left with the bank, and at other times said that the papers were left with her. She testified that several years after the payment was made, and perhaps two years before the payment was indorsed on either note, she called plaintiff's attention to the fact that the payment had not been indorsed on either note, and was advised by him that L. A. Burgher would tell her what to do about that. At some time plaintiff told L. A. Burgher that he could apply the $4,500 as he desired. In 1926 L. A. Burgher called at the bank, where plaintiff's papers were kept, and directed Mrs. Moler, to indorse the $4,500 on the $5,000 note, and this was done by her.

It has been noted that the defense was payment. The record is clear that, unless the $4,500, hereinbefore referred to, discharged the note sued on, it is unpaid.

In this situation it becomes necessary to consider the conversations between the defendant, John Burgher, and L. A. Burgher, at the time arrangements were being made to take up the $4,500 check.

It has been noted that L. A. Burgher was president and the defendant, John Burgher, cashier of the bank on which the $4,500 check was drawn. Upon being told by the clerk in the bank that the check would not be honored, L. A. Burgher conferred with the defendant, John Burgher, in the bank. L. A. Burgher testified that in this conference he told the defendant, John Burgher, that the $4,500 check was given to plaintiff to apply on the $4,000 note. He was unable to induce the defendant to honor the check, and left the bank for the purpose of making other arrangements to take up the check. On the same day he borrowed $3,600 from a third party, and, after so doing, returned to the bank and again conferred with the defendant. At this time he procured $185 from the defendant, for which he gave his note, and this amount, together with the $3,600 which he had borrowed and the balance in his account, enabled him to procure two drafts in an amount sufficient to take up the check. L. A. Burgher testifies that nothing was said in this second conference about the application of the payment to any note. The defendant, John Burgher,

testified as a witness in his own behalf. He stated that he talked to L. A. Burgher about the check after the check had been protested, and that L. A. Burgher said that the check was given to apply on the $4,000 note; that there was some discussion between them about how the protested check might be taken care of, and that L. A. Burgher said he would go and get the money and take care of it; that he left the bank and later returned with two drafts totaling approximately $3,600 (these items are the $3,600 loan hereinbefore referred to). At this time the note for $185 was given for the amount loaned by defendant to L. A. Burgher, and two drafts issued in an amount sufficient to take up the protested check as hereinbefore set forth. The defendant John Burgher does not testify that anything was said during the second conference in relation to the purpose for which the $4,500 check was given or the note in payment of which it was to be applied. The testimony reveals the following situation: For the purpose of inducing the defendant, John Burgher, as cashier of the Peoples Bank, to honor the check, L. A. Burgher stated to him that the $4,500 check was to be applied upon the $4,000 note on which they were liable. He was not able to induce defendant to honor the check. He then borrowed $3,600 for which he ultimately gave a note signed by himself and his father, A. Burgher, who had signed the $5,000 note with him. He testified that, in view of the change in the source of funds, he felt at liberty to apply the payment where he saw fit; that, when he borrowed the $3,600, he had his mind made up as to where the payment should be applied. On the other hand, the defendant, John Burgher, now rests his defense of payment upon the statement that the $4,500 payment was to be applied upon the $4,000 note, and testified that he would not have loaned the $185 if he had not believed this to be true.

The defendant pleads:

1. That the $4,500 payment was, in fact, applied upon the $4,000 note by L. A. Burgher.

2. L. A. Burgher had waived his right to apply the $4,500 payment on the $5,000 note.

3. That L. A. Burgher was estopped from making application of such payment other than to the note sued on.

4. That by long delay in making actual application of the payment L. A. Burgher waived any original right to apply said payment on the $5,000 note, and has lost such right.

5. That the defendant, John Burgher, having furnished $185,

of the sum necessary to take up the protested check, and being one of the debtors on the $4,000 note, had the right to direct where the payment should be applied.

6. That, since the defendant had an interest in a portion of the $4,500 fund, the debtor and creditor did not have the right to apply the payment as they might choose, but were bound to protect the rights of the defendant.

7. That plaintiff had constituted L. A. Burgher his agent for the purpose of indicating where the payment should be applied and thereby became charged with knowledge of the facts known by L. A. Burgher, in consequence of which the application of the credit on the $5,000 note was of no force or effect, and by reason of which plaintiff is estopped from claiming that the payment was properly credited on the $5,000 note.

8. That, by leaving the notes in the custody and control of Mrs. Moler and authorizing her to indorse the payment upon the note as directed by L. A. Burgher, plaintiff thereby constituted Mrs. Moler his agent, and thereby became charged with the knowledge of the rights and equities of the defendant in the $4,500 payment then had by her; that Mrs. Moler had been fully informed of the rights and equities of said defendant; and that thereby plaintiff was barred and estopped from claiming that the payment was properly credited on the $5,000 note.

9. That A. Burgher had become insolvent. That plaintiff and his representatives L. A. Burgher and Mrs. Moler knew of such insolvency, and because of such insolvency made application of the $4,500 payment upon the $5,000 note, of which said A. Burgher was a maker, by reason of which plaintiff is barred and estopped from claiming the benefit of the wrongful appropriation of the payment.

10. The defendant, John Burgher, has been damaged by long delay in bringing suit upon the note, in consequence of which, plaintiff is barred and estopped from denying that the note has not been paid.

Most of the pleaded defenses can be disposed of summarily. The payment was never applied on the $4,000 note. It may be conceded that L. A. Burgher had no right to apply the payment on the $5,000 note, without prejudice to plaintiff's motion. The defendant loaned the $185 to L. A. Burgher. He owned none of the fund paid. He at no time made, or attempted to make, any application of the payment. In making application of the payment, plaintiff was bound

to respect only such rights of defendant as were known to him. Tanner v. Lee, 121 Ga. 524, 49 S. E. 592; Jefferson v. Church of St. Matthew, 41 Minn. 392, 43 N. W. 74. The fact that A. Burgher, a signer on the $5,000 note, had become insolvent, and the additional fact that L. A. Burgher was in dire financial straits, would not have any effect upon the right of either plaintiff or L. A. Burgher to make application of the payment. This leaves only the questions of the validity of the application of the $4,500 payment upon the $5,000 note, and the general estoppel of plaintiff, for consideration.

The case made by the record is not that of a surety making the payment. It is not urged that the money paid belonged to defendant. The defendant made a loan of $185 to L. A. Burgher. The money thereby became L. A. Burgher's. Defendant merely says he would not have made the loan if he had not been told that the check was to apply on the $4,000 note. For the purpose of this discussion only it will be conceded that L. A. Burgher was estopped from applying the $4,500 payment to any note other than the one in suit. If an analysis is made of the claim that estoppel prevents the application of the payment on the $5,000 note, the conclusion cannot be escaped that such estoppel does not arise from an interest in, or ownership of, the funds, but must grow out of a relationship existing between defendant and L. A. Burgher. Ostensibly and in fact the funds were L. A. Burgher's. On the face of things, he was at liberty to apply them as he saw fit. As between defendant and L. A. Burgher, the estoppel would be operative, and likewise as to third parties having knowledge of the facts, not because L. A. Burgher was misapplying defendant's funds, but because L. A. Burgher had stated that other application of his own funds had been made. Under rules universally recognized, the defendant, rather than plaintiff, must suffer for the breach of good faith by L. A. Burgher. Creveling v. Banta, 138 Iowa 47, 115 N. W. 598. Usually, restrictions of this character upon rights affect only the parties to the transactions out of which the restrictions grow, and persons having, or charged with, knowledge. Defendant's position is that plaintiff's rights to make application of the payment were no greater than the actual rights of L. A. Burgher, but it is quite obvious that plaintiff's rights were untrammelled because his rights were not derived from L. A. Burgher, and he had no knowledge of defendant's claims. Plaintiff was at liberty to apply the payment on either note. Jefferson v. Church of St. Matthew, 41 Minn. 392, 43 N. W. 74. Since plaintiff had the

power to apply the payment to either note, he had power to apply it to whichever note L. A. Burgher might indicate, and such application would be valid, being made in virtue of plaintiff's right. The record and defendant's pleadings indicate beyond all doubt that the application of the payment upon the $5,000 was not made by L. A. Burgher in his own right. It is clear, in the situation presented by the pleadings and the record, that the validity of the application of the payment to the $5,000 note rests upon plaintiff's power of application, which was plenary.

 Appellee asserts that plaintiff had no right to credit the payment on the $5,000 note, because L. A. Burgher was plaintiff's agent in directing the application of the payment, and plaintiff was charged with the knowledge had by L. A. Burgher concerning defendant's rights. Notwithstanding the fact that plaintiff alleged in a reply that L. A. Burgher was his agent, appellee concedes in argument that whether L. A. Burgher was plaintiff's agent is a fact question, under the record. The record is clear that the application of the payment was made by plaintiff, and this is conceded by both parties in argument. The testimony on which the question must be determined is brief and is given in its entirety. L. A. Burgher testified: "He (plaintiff) told me to go into the bank and put it where I wished". Mrs. Moler testified:

"I said (to plaintiff) do you know that credit has never been made on that note? And he said: 'Lou (L. A. Burgher) will tell you what to do with that'.

"Q. Well, Lou did tell you? A. Yes sir.

"Q. And you did then as Lou said? A. I did."

It is obvious that, in expressing his wishes to Mrs. Moler, L. A. Burgher was not acting as the agent of plaintiff. He was doing no act for plaintiff. He was not expressing plaintiff's wishes. He was expressing his own. Agency, of necessity, implies that one does an act for another. Mrs. Moler was plaintiff's agent, authorized to indorse the credit in accordance with the wishes of L. A. Burgher, but L. A. Burgher could not be the agent of plaintiff in expressing his own wishes, because it was his own wishes, and not plaintiff's that he expressed. Behind the contention that L. A. Burgher was plaintiff's agent is the thought that Mrs. Moler could not make the indorsement of the credit without first ascertaining from L. A. Burgher his desires concerning the note upon which the indorsement should

be made. But that fact did not constitute L. A. Burgher plaintiff's agent. So far as plaintiff and Mrs. Moler were concerned, L. A. Burgher was only a source of information, and was in no sense an actor in the application of the payment. We reach the conclusion that L. A. Burgher was not plaintiff's agent, and consequently plaintiff was not charged with knowledge had by him, at the time the payment was applied.

Even though the relationship existing between plaintiff and Burgher were that of principal and agent, plaintiff would not be charged with knowledge had by Burgher, on account of the personal interest of Burgher in the entire transaction. Templeton v. Stephens, 212 Iowa 1064, 233 N. W. 704; Laird & Keehner v. McCord, 196 Iowa 972, 195 N. W. 517; First National Bank of Davenport v. Gifford, 47 Iowa 575; Hummel v. Bank of Monroe, 75 Iowa 689, 37 N. W. 954.

Appellees argue that, notwithstanding the personal interest in the whole matter had by L. A. Burgher, plaintiff was charged with knowledge of defendant's rights, because of the relationship of agency. No cases have been cited to indicate that the situation is not ruled by the cases above referred to, and search for such authorities has been of no avail.

Upon consideration of the record, we reach the conclusion that the $4,500 payment was validly applied upon the $5,000 note. This leaves the defense of payment, in every aspect pleaded by defendant, without any support in the record.

Before expressing our conclusions upon this assignment of error, it may be well to briefly advert to the contention that plaintiff is estopped from maintaining this action. What has been said in the preceding paragraphs precludes the thought that any element of estoppel against plaintiff is supplied by the application of the payment to the $5,000 note. There are but two other circumstances that deserve attention. One is the fact that suit was not commenced upon the note at an earlier date. The other is a conversation in March of 1928 between plaintiff and defendant in relation to the note sued on and the application of the payment to the $5,000 note, which is shown in the record as follows:

"He (plaintiff) came in the bank one morning, * * * He says, 'John,' * * * 'I have got a note on you.' I says, 'George, I don't think you have.' 'Yes,' he says, 'I have got a note on you.' I asked him what note it was. He said the one I signed with L. A. Burgher.

I told him, 'Mitchell, that has been paid long ago.' 'No,' he says, 'I reckon not,' and I says, 'It has been paid years ago,' and I went on and told him about it. * * * Well, I asked him if he didn't get my draft I sent him to pay that note, and he said he did. 'Well,' I said, 'don't that pay the note?' He said, 'Yes, sir, that paid that note.' I told him I reckoned that was settled with them. He said, 'Yes.' Then he studied a minute. He says, 'I took that money and gave credit on Lou's other note.' I says to him, 'What other note?' He says, 'I have got another note on Bud.' Of course that kind of riled me up a bit, and I told him that was a great way to do business, take my money and pay another man's note. * * * I says to him, 'Mitchell, you credited the wrong note.' 'No,' he says, 'No, I reckon not.' 'Well,' I says, 'yes you have.' He told me Bud and Lou had a note. I says, 'Yes, you monkeyed along until Lou had left the country and Bud broke up and you hold that note and credit that other note.' * * * I think he went and left the bank at that time. He was gone, I judge, about 20 minutes, and he came back. He came back and says, 'If I have credited the wrong note I will credit the right one.' I told him that would settle the whole business and he left the bank at that time."

In none of these things, nor in any other respect, does the record indicate that plaintiff acted other than in good faith and well within his rights, and it is, of course, unnecessary to pursue the inquiry further.

The defendant failed to sustain his defenses, and it follows that plaintiff's motion for a directed verdict should have been sustained.

■ II. Appellant complains of the manner in which the court stated the issues tendered by the defendant's pleadings. The court quoted or closely paraphrased the language of the pleadings, with the result that the statement of the claims of the parties is lengthy and contains evidentiary and argumentative matter, but, after this somewhat extended statement of the claims of the parties, the court briefly and correctly summarized the issues tendered by the pleadings. The judgment must be reversed for other reasons, and it is necessary to do no more than suggest that the better practice is to succinctly state the claims of the parties without quoting at length or closely paraphrasing the pleadings.

■ III. In the fourteenth instruction the court told the jury, in effect, that possession of the uncanceled note by the payee raised a rebuttable presumption that the note had not been paid; that such

presumption is materially weakened by long, unexplained delay after maturity in attempting to enforce payment; that such delay, if shown, was material for their consideration; and that it was for them to determine the weight to be given to the presumption and whether it had been overcome by the evidence. In the fifteenth instruction the court stated that failure of plaintiff to bring suit on the note at an earlier date did not create a legal presumption that the note had been paid, but that such failure was a circumstance to be considered, in connection with all other evidence, in determining whether the note had been paid. In this connection, it may be noted that the court refused to give an instruction, requested by plaintiff, to the effect that the mere failure of plaintiff to earlier commence suit against defendant, who had been a continual nonresident of Iowa, did not raise a presumption that the note had been paid.

Delay in bringing suit upon a note extending over a period of 20 years after maturity raises a presumption that the note has been paid. But delay for a shorter period of time does not, in and of itself alone, raise such presumption. Delay for a shorter period of time in connection with other facts and circumstances may support a finding of payment. Forsyth & Co. v. Ripley, 2 G. Greene 181; Nash v. Gibson, 16 Iowa 305; Fuller v. Lendrum et al., 58 Iowa 353, 12 N. W. 340; Manning v. Meredith, 69 Iowa 430, 29 N. W. 336. Such presumptions are rebuttable. Walker v. Russell & Brother, 73 Iowa 340, 35 N. W. 443. Because the law raises a presumption that an uncanceled note in the possession of payee has not been paid, it does not follow that the jury must find nonpayment from proof of such facts. Likewise a finding of payment is not made imperative by the presumption of payment raised by proof of delay in bringing suit after maturity and circumstances corroborative of payment. Proof of facts, creating the presumption, warrants and sustains the finding of the fact presumed. Proof of both sets of facts may be present in one case, and in such situation it is proper for the court to instruct upon both presumptions. But it cannot be said that the one presumption weakens the other, for the jury must weigh one against the other and find the fact, and such finding is sustained by the presumption supporting it. The thought expressed by the trial court that the presumption of nonpayment is weakened by delay in bringing suit leads naturally to the conclusion that a finding of nonpayment could not be sustained by the weakened presumption. For all practical purposes, the court gave

to delay, short of the necessary period, alone, the force and effect of creating a presumption of payment.

It has been noted that delay short of a period of 20 years does not raise a presumption of payment. Consequently, when the period of delay is less than 20 years, the court must determine that there are other facts and circumstances, in evidence corroborative of payment, before instructing that the presumption of payment may arise from the delay and supporting circumstances. The fact that the defendant may have been a nonresident during the period of the delay, and that the obligation could only be enforced by attachment, attended with the danger of giving bond, are circumstances that militate very strongly against the propriety of an inference of payment from delay in bringing suit. Ludwig v. Blackshere, 102 Iowa 366, 71 N. W. 356. It is not necessary to decide whether the presumption of payment can ever arise in a case in which the delay is for a period less than 20 years, and the defendant has been a nonresident of the state during the period of delay. It is sufficient to say that the record presents a case in which an inference of payment cannot be sustained by the delay disclosed and the other facts and circumstances in evidence, and that consequently the court was in error in instructing upon the presumption. We assume that the plaintiff's requested instruction was asked only for the purpose of preserving his objection to the instructions given, and will not give it separate consideration.

IV. The court instructed the jury that the testimony in relation to the conversation between L. A. Burgher and John Burgher on the day that arrangements were made for raising funds with which to take up the $4,500 check was hearsay and incompetent and immaterial, as to plaintiff, unless it was shown that such conversation was brought to his knowledge before he made application, or gave credit, for the $4,500 payment. This instruction is the subject of several complaints, only one of which has merit. There was no evidence in the record to warrant a finding that these conversations were ever brought to the knowledge of the plaintiff. In consequence of this, the instruction is not sustained by the record.

V. In the second instruction the court told the jurors that, if it was established by the preponderance of the evidence that the defendant was induced to furnish part of the money, with which the $4,500 payment was made, in reliance upon a statement made by L. A. Burgher that the payment had been applied on the $4,000

note, and that, in reliance upon such statement, the defendant refrained from giving direction as to such application, and that plaintiff knew of these things, at the time credit was made upon the $5,000 note, then the defense of estoppel would be established. The court then proceeded to tell the jury that there was no evidence in the case that plaintiff actually knew of such facts and that it conclusively appeared that Mrs. Moler did not have such knowledge at the time she made the indorsement upon the note, but that, if the jury found by a preponderance of evidence that L. A. Burgher was acting as an agent for plaintiff in directing the application of the $4,500 payment to the $5,000 note then the knowledge of L. A. Burgher would be imputed to plaintiff, in which event, if the jury further found that L. A. Burgher had procured the loan of $185 by representing that he had directed the application of the $4,500 payment on the $4,000 note, the defense of estoppel would be made out. The instruction is clearly erroneous and highly prejudicial. There was no testimony in the record indicating that L. A. Burgher was acting as the agent for plaintiff in directing the application of the payment to the $5,000 note, and there was no evidence that defendant refrained from directing application of the payment in reliance upon the statement of L. A. Burgher.

VI. Appellant complains because the court refused to give an instruction requested by him to the effect that the maker of a note has a legal right to demand and receive the note when paid in full; that the possession of the uncanceled note by plaintiff raised a presumption that it had not been paid and that the burden was upon the defendant to overcome such presumption and to prove payment. The only part of the requested instruction, which was not given, in substance and effect, in other instructions, was the statement that the maker of a note has a right to demand and receive the note upon its payment. In view of the fact that the defendant was surety upon the note, it cannot be said that he would have a right to demand the delivery of the note to him upon its being paid by the principal debtor. In view of the instructions given, there was no error in the refusal of the trial court to give the requested instruction.

VII. Other errors assigned are disposed of by the preceding discussion.

Appellant's motion to tax the costs of printing appellee's ad-

ditional abstract to appellee was submitted with the case. The motion will be overruled.

It follows from what has been said that the judgment of the trial court must be reversed.—Reversed.

Motion to retax cost overruled.

KINDIG, C. J., and EVANS, ALBERT, DONEGAN, and STEVENS, JJ., concur.