J. E. LOVEJOY, Appellant, v. EUCLID AVENUE METHODIST EPISCOPAL CHURCH, a corporation, et al., Appellees.

No. 45272.

DECEMBER 10, 1940.

REHEARING DENIED MARCH 14, 1941.

Herrick, Sloan & Langdon, for appellant.

Emmert, James & Lindgren and Guy Miller, for appellees.

RICHARDS, C. J.—The Euclid Avenue Methodist Episcopal Church of Des Moines is an Iowa corporation not for profit. In 1926 it contracted with plaintiff, J. E. Lovejoy, for the construction of a church building, agreeing to pay him therefor between $34,000 and $35,000. Lovejoy completed the building and it was occupied by the church in the fall of 1927. But approximately $9,000 of the contract price remained unpaid. Three promissory notes aggregating this amount were made to Lovejoy, and were assigned by him to the Valley National Bank as collateral. The evidence is controversial as to who were the obligors on these notes. Lovejoy testified that in the early part of 1929 the bank required that a new note be procured to take up the three the bank still held as collateral and which were past due. The aggregate amount remaining due on April 1, 1929, was $8,500. A new note was drawn bearing that date, in the principal amount of $8,500 payable to Lovejoy. Though drawn a few days later than April 1st, it was dated as of April 1st, the day to which the interest had been computed. Subsequently to its date the note was signed and delivered to Lovejoy and by him was assigned to the bank as collateral. Later Lovejoy reacquired the note from the bank and instituted the case now before us to recover thereon. It was drawn upon a printed form in common use by the bank. It was signed as follows: "R. R. Maxson, Pres." and underneath that signature appeared "Alma C. Eide, Sec'y." On the back of the note were the signatures of R. R. Maxson, Peter Eide, Alma C. Eide, W. H. Heath, Geo. E. Schroeder, G. H. Killinger, J. C.

Rusterholz, Frank Dart, H. E. Sorenson, without more, and in the order named. All these whose signatures so appeared, as well as the church corporation, were made defendants. Against all these defendants plaintiff demanded judgment upon the note. Cross-petitions were filed by all the defendants, excepting the corporation, in which were these averments: That at the time the note was signed R. R. Maxson was the president and Alma C. Eide the secretary of the board of trustees of the corporation, and the cross-petitioning defendants were the entire membership of that board; that their signatures were obtained to the note upon the representation that they were incurring no personal liability, but that their signatures as said officers and trustees were necessary on behalf of the corporation; that it was represented to them that they were signing the note as such officers and trustees; that they signed the instrument upon said representations. In an amendment it was alleged that the note was signed on the condition that it would not be delivered until properly completed as an obligation only of the corporation; that there was never any authorized or legal delivery of the note. Cross-petitioners prayed that the note be reformed by inserting immediately following the last signature on the back of the note the words "As the Board of Trustees of the Euclid Avenue Methodist Episcopal Church" and further reformed by inserting the words "Euclid Avenue Methodist Episcopal Church by" preceding the names of R. R. Maxson, Pres., and Alma C. Eide, Sec'y., on its face. Transferred to equity for hearing the case was tried upon the issues presented in the cross-petition. The court found for cross-petitioners and decreed that the note be reformed substantially as prayed by them, and ordered the cause transferred back to the law division of the court for entry of judgment in conformity with the decree and its findings. From the decree plaintiff has appealed.

Upon the trial of the equity issues, the cross-petitioners, other than Rusterholz, Dart, and Peter Eide, testified that they placed their signatures on the note at a meeting at which they as well as one Rev. Pettit were present. Rev. Pettit testified that he told those present that, according to Methodist discipline, in signing instruments involving church property the trustees signed as trustees of the church; that it was the wish of the

church that they should not involve themselves in personal liability; that those present expressed themselves as not willing to sign the note if it involved personal liability; that witness replied that according to the law of the church they were not so doing; that after the witness gave these assurances those present signed the note. The testimony of this witness the court admitted subject to objections plaintiff made thereto. The testimony of another witness, R. R. Maxson, was that he was there and told those present that they were assuming no personal responsibility and were signing as trustees. He testified that those present would not sign the note without that statement from the witness; that the word ''Trustees'' does not appear on the note following the signatures because of an oversight on part of witness. This testimony was admitted subject to objections plaintiff made thereto. The others of cross-petitioners who were present testified that they heard and relied on what Pettit and Maxson said, that is, the matters shown above in the testimony of Pettit and Maxson, and testified that Maxson assured them that before the note would be delivered to Lovejoy he would fill in the spaces in the note. Maxson also testified that, prior to this meeting the plaintiff, at his office, had handed the then unsigned note to the witness saying that he, Lovejoy, wanted the signatures of the proper officials of the church, and also the trustees; that Lovejoy did not ask witness or anyone to sign the note personally; that Lovejoy did joke about it and said he would like it that way but that witness told him ''nothing doing''. Neither Maxson nor any other witness testified that in 1929 at the aforementioned meeting, Maxson mentioned the alleged transaction with Lovejoy in his office, or mentioned what Lovejoy allegedly there stated.

Lovejoy as a witness denied that there ever had been any such a transaction in his office as related by Maxson, and testified that in fact the note, before being signed, had left his hands on April 17, 1929, by mail, when it was enclosed in a letter, duly stamped and directed and mailed to Building Committee, Euclid Ave. M. E. Church, Des Moines, Iowa, and that the letter was never returned. Lovejoy identified and there was introduced in evidence what he testified was a carbon copy of

this letter, barring the signature on the original. A notice to defendants to produce the original had previously been given. The carbon copy is in these words:

"April 17, 1929.
"Building Committee of the Euclid Ave. M. E. Church,
"Des Moines, Ia.
"Gentlemen:

"Enclosed herewith find new note in the sum of $8,500.00, with interest due April first in the amount of $167.50, covering the following:

$2,500.00 due July 1st, 1928, Int. to April 1, 1929............$112.50
$2,500.00 due Sept. 1, 1928, Int. to April 1, 1929.............  85.50
$4,000.00 due Dec. 1, 1928, Int. to April 1, 1929.............  80.00
                                                                _____
                                                                $178.00

Payment of $100.00 paid Sept. 10, 1928
Payment of $400.00 paid Dec. 14, 1928
    "The above payments reduce the Interest by............  10.50
                                                                _____
    "Interest due............................$167.50
"This leaves balance of new note $8,500.00
"New note must be signed by the following:
        R. R. Maxson
        J. C. Rusterholz
        Geo. E. Schroeder
        Peter Eide
        W. H. Heath
        G. H. Killinger
        Frank Dart
        Alma C. Eide
"also endorsed by all on back as personal guarantee.

"It is understood by mutual agreement that the above note and endorsements do not invalidate my right to a Mechanics Lien.

"Please understand that the Valley National Bank holds these notes with my endorsement as collateral, and they insist that I have the same parties endorse on back as additional security.                    "Yours very truly,"

The testimony of Lovejoy was that as he recalls it the note as now signed was later returned to him by some member of the board. He also stated: "As I recall, the three old notes were signed by the same parties that signed the new note." The canceled notes were not produced on the trial. With reference to the original of the carbon copy of letter of April 17, 1929, referred to in Lovejoy's testimony, Alma C. Eide, secretary of the board of trustees from 1919 to 1933, testified she had kept a file of the letters received by the board of trustees and by the building committee but that at the time of the trial the file was not in her possession and that she was not sure where it was. She stated she gave part of the records to Rev. Nye and could not recall whether he returned them. She further stated: "I tried to look through the correspondence last night to see whether I may have any of this correspondence but I couldn't find it." She stated she didn't recall any letters addressed to the building committee that came to her. She and several of the cross-petitioners, who testified, denied seeing an original of the alleged carbon copy. Defendants also point out, as of some importance in their opinion, that prior to April 1929, the building committee had completed its work and was dissolved as a committee. As refuting the claim that plaintiff in the alleged letter or at any time required that cross-petitioners sign the note as individuals the cross-petitioners point to the following evidence. Cross-petitioner Schroeder testified that in March 1929, Lovejoy spoke to him and said "Mr. Schroeder, I wonder if your church board would be willing to give me one note for the balance due me," and that witness replied "I am sure the board of trustees would be willing to give you a note if that will assist you." The witness further stated that plaintiff did not say that he wanted us to sign or endorse that note personally. This testimony is denied by Lovejoy. On the same question importance is attached by plaintiff to the following. In June 1932, the bank brought an action at law on the same note as is now involved in instant case, and made the cross-petitioners defendants, and served original notice on them demanding judgment against them. Cross-petitioners employed counsel, who entered into a stipulation with counsel for the bank. Therein it was recited:

"Whereas, the plaintiff was about to file in the office of the Clerk of the District Court, in and for Polk County, its petition claiming a sum of money due on a promissory note executed and delivered by the defendants.

"Whereas, said petition was drawn and ready for filing in the July, 1932 term of said court, but by agreement of attorneys for plaintiff and defendants, the filing of said petition was to be filed on this 12th day of July, 1932, with full effect as if filed on June 23, 1932.

"Whereas, we, the undersigned attorneys for plaintiff and defendants, do not desire to place said petition on file at this date.

"Now, therefore, it is further agreed and stipulated by the attorneys hereto that said petition may be filed on the .......................day of................................................, 1932, with the same force and effect as if filed on the 23rd day of June, A. D. 1932, and the original notice as served shall have the same force and effect."

There is on the note an endorsement of $375 paid on the principal July 11, 1932, the day before the date of the stipulation. In the case brought by the bank the petition was not filed.

It should also be stated that defendants Rusterholz, Dart, and Peter Eide, who were not at the afore-mentioned meeting, each testified he separately had a subsequent transaction with Maxson and Rev. Pettit similar to that allegedly had between Maxson and Pettit and those at the meeting. Witnesses Rusterholz, Dart and Eide testified similarly as did the cross-petitioners who attended the meeting and apparently, upon the record, they stand in the same position as those who attended.

The averments of the cross-petitions are that defendants' signatures were obtained upon certain representations, but unaccompanied by any allegations bringing the representations home to plaintiff, or making any discernible complaint concerning them. This aspect of their pleading seems to be carried into appellees' argument in this manner. They urge that Maxson was the agent of Lovejoy and had actual authority to procure the execution of the note, and implied authority to make the representations. Appellees' conclusion is that the

representations were Lovejoy's. But we are unable to agree, for the reason that, if there was the transaction in Lovejoy's office as related by Maxson, the record discloses that the interests of Lovejoy and Maxson were at all times wholly adverse, each dealing at arms length with the other. In such facts and situation is not discoverable or reasonably inferable the relation of principal and agent. Schuling v. Ervin, 185 Iowa 1, 169 N. W. 686; Clapp v. Wallace, 221 Iowa 672, 266 N. W. 493; Mitchell v. Burgher, 216 Iowa 869, 249 N. W. 357.

The parties appear to have tried the case on the theory that the issue presented by cross-petitioners was whether, on account of mutual mistake of the parties, cross-petitioners were entitled to reformation. The examination of the cross-petitioners upon that issue was very largely directed to the question whether they heard and relied on the statements and assurances of Rev. Pettit and Maxson. But aside from that, there appears to be testimony on part of cross-petitioners that what they had in mind was to confine their acts to an execution of the note in their representative capacities as trustees. The evidence that they had signed the original three notes as individuals is no stronger than the somewhat uncertain recollection and testimony of plaintiff that they were so signed. The evidence is that these original notes were surrendered to some one of the trustees, and there is no attempt to account for their nonproduction. If produced they would evaluate the recollection of Lovejoy, with absoluteness. But it may be also said that it is a reasonable possibility that they are not longer in existence, after the lapse of so many years.

The serious question, if there was a mistake on part of cross-petitioners, is whether it was mutual or was known to and taken advantage of by plaintiff in an unjustifiable manner. It is Lovejoy's testimony that he never heard of any claim of nonliability of defendants until after the instant case was brought. That he never did stands uncontradicted. The original notice served in the action brought by the bank in 1932 demanded personal judgment against the present cross-petitioners. True, the case did not progress to a point where defendants were compelled to file answer. But they must then have known all they claimed to know as witnesses on the trial.

So there is in the record, without explanation, the circumstance that in 1932, and until this suit, neither defendants nor their then counsel were making any claim that they were not personally liable, as the plaintiff bank was claiming the fact to be, and as indicated by the note on its face. The testimony of Maxson and Schroeder, if accepted as a verity, would indicate error in the testimony of Lovejoy that he did not agree to accept the note without personal liability. But that involves discarding the carbon copy of the letter of April 17, 1929, which it may be speaks less erringly than do witnesses, depending on memory alone, relating events after the lapse of over ten years. The conflict in the record as a whole leaves a trier of the facts in doubt. On a writing recording an agreement the parties have made, the law accords them a right to rely. That is of the essence of such a writing. In the general interest it must be so. The result is that one seeking to disturb that repository or monument of an accord, must adduce evidence showing so clearly, satisfactorily and convincingly that a mutual mistake, or its equivalent, was made, that the conscience of the chancellor will be, as is sometimes said, unwillingly moved to accord relief. There is so much of doubt as to where lies the truth as between the parties here, that the necessary conclusion is that cross-petitioners have failed to carry the burden that reasons of public policy impose upon them. A reversal is unavoidable, and the cause is remanded for decree in accordance herewith.—Reversed and remanded.

HAMILTON, MILLER, BLISS, SAGER, STIGER and HALE, JJ., concur.